UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                  Plaintiff/Respondent,       Crim. No. 10-CR-20058
                                          Civ.   No. 12-CV-11913
vs.                                       Hon. Gerald E. Rosen

ROOSEVELT SMITH,

                  Defendant/Petitioner.
_____/

OPINION AND ORDER DENYING DEFENDANT'S MOTION PURSUANT
TO 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on September 30, 2015

PRESENT:  Honorable Gerald E. Rosen
                    United States District Judge


## I.  INTRODUCTION

On January 10, 2011, Defendant Roosevelt Smith entered a guilty plea, pursuant to

a Rule 11 Plea Agreement, to being a felon-in-possession of a firearm and subject to the

Armed Career Criminal Act ("ACCA").  Under the Plea Agreement, Defendant agreed to

the statutory minimum sentence of 15 years (180 months) and the statutory maximum

three-year term of supervised release.  Defendant also waived his appeal rights as to both

1

his conviction and sentence.[1]

The Court accepted the Plea Agreement and, in accordance with the agreement and the Government's motion for downward departure, on May 9, 2011, sentenced Smith to 156 months incarceration to be followed by a three-year term of supervised release.

On April 26, 2012, Defendant filed the instant motion to vacate his sentence pursuant to 28 U.S.C. § 2255. As grounds for § 2255 relief, Defendant Smith alleges that he pled guilty due to the ineffective assistance of counsel.   Specifically, Smith claims (1) he was coerced by his attorney to plead guilty; (2) he was misled as to the maximum sentence:  he claims he was led to believe that he could get up to 180 months but was not told that 180 months was mandatory; and (3) his attorney never challenged his being sentenced pursuant to the ACCA even though his prior convictions do not meet the required elements of the ACCA.

Smith  subsequently filed a Motion to Amend his § 2255 Motion on September 16, 2014, seeking to supplement his original claims with additional arguments and citations to recent decisions of the United States Supreme Court which he believes are favorable him. In this motion to amend, Smith also asserted several new claims, to-wit,

1.      that he is actually innocent of the felon-in-possession charge

--------

[1] On the same day that Defendant entered into the Plea Agreement, he also executed a Cooperation Agreement with the Government, pursuant to which the Government agreed that, if it found that Defendant's cooperation amounted to substantial assistance, the Government would seek a downward departure from the 180-day statutory minimum sentence.  This Cooperation Agreement was incorporated into the Plea Agreement.

because
>> (a) he was not residing at the home on Northlawn at
>> the time the ATF agents executed the warrant and
>> found the firearm giving rise to the felon-in-possession
>> charge, and
>>
>> (b)  he was coerced into admitting that the firearm
>> belonged to him by one of the ATF agents; and

2.      that his Fifth Amendment rights were violated because he was
not given *Miranda* warnings before he was asked by one of
the ATF agents at the time of the execution of warrant if the
gun found at the residence belonged to him.

Then, on August 11, 2015, Smith filed a second motion to amend (captioned as a

"Review and Reconsideration Request in Light of Invalidation of ACCA Residual

Clause") seeking to supplement his § 2255 motion with the Supreme Court's recent

decision in *Johnson v. United States*, 135 S.Ct. 2551 (2015).

<u>DISCUSSION</u>

Before addressing the substance of Defendant's § 2255 arguments, the Court will

address the Motions to Amend.

A.      THE AEDPA ONE-YEAR LIMITATION PERIOD AND MOTIONS TO
AMEND

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides a one-

year limitation period in which to file a motion to vacate a federal conviction.  *See* 28

U.S.C. § 2255(f); *Mayle v. Felix*, 545 U.S. 644, 655, 125 S.Ct. 2562, 2569 (2005).  The

limitation period runs from the latest of:

(1)  the date on which the judgment of conviction becomes final;

3

(2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Relevant here is subsection (f)(1) -- the date on which the judgment of conviction became final.

Because Smith expressly waived his right to appeal his conviction and sentence in his Rule 11 Plea Agreement, the judgment of conviction became final on May 24, 2011, fourteen days after it was entered.  *See Sanchez–Castellano v. United States*, 358 F.3d 424, 426 (6th Cir .2004) ("an unappealed district court judgment of conviction becomes 'final' [fourteen] days after the entry of judgment, at least where the defendant has not actually sought an extension of appeal time for good cause or excusable neglect." *Id.* (footnote omitted)).  Smith's § 2255 Motion was timely-filed within the period of limitations on April 26, 2012 -- approximately one month before the limitations period expired.

Defendant's two Motions to Amend his § 2255 pleadings, however, were filed long after the AEDPA period of limitations expired:  his first Motion to Amend was filed on September 16, 2014, some 28 months after the period of limitations expired, and his

4

Second Motion was filed on August 11, 2015, more than three years too late.

If an amendment to a 2255 motion is untimely filed, the Court looks to equitable tolling rules and Rule 15 of the Federal Rules of Civil Procedure in reaching its decision regarding the timeliness of the proposed amendment.[2]  If the amendment is barred by § 2255's statute of limitations and not subject to equitable tolling rules, then the Court must determine whether the amendment relates back under Rule 15(c) of the Federal Rules of Civil Procedure to the movant's previous claims.  *Mayle v. Felix*, 545 U.S. 644, 656-57, 125 S.Ct. 2562 (2005).

To warrant equitable tolling, Defendant must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 2562 (2010) (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807 (2005)). The Sixth Circuit has repeatedly made clear its view that "equitable tolling relief should be granted only sparingly." *See Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir.2001). Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. *Graham-Humphreys v. Memphis Brooks Museum, Inc.*, 209 F.3d 552, 560-61 (6th

---

[2]  Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts states that the Federal Rules of Civil Procedure apply in § 2255 proceedings "to the extent that they are not inconsistent with any statutory provisions or [the § 2255] rules."

Cir.2000). Defendant Smith's motions contain no allegation that any extraordinary circumstance stood in his way and prevented him from timely filing his motions to amend. Indeed, neither motion presents any basis for equitable tolling. Since Defendant Smith has failed to offer any explanation for the delay, the Court finds he has failed to demonstrate that equitable tolling is appropriate in his case.

The relation-back provision in the Fed. R. Civ. P. 15(c)(2) provides that pleading amendments relate back to the date of the original pleading when the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Rule 15(c)(2) "relaxes but does not obliterate the statute of limitations; hence relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix,* 545 U.S. at 659 (citations omitted). The Supreme Court observed that if claims asserted after the one-year period could be revived simply because they related to the same trial, conviction, or sentence, AEDPA's limitation period would have slim significance. *Id.* at 662.

Although Defendant's August 2015 proposed amendment and that portion of Defendant's September 2014 proposed amendment which merely supplements his original 2255 motion with additional arguments and citations of additional authority clearly relate back to his original filing, the new claims he raises in his September 2014 motion -- i.e., his claims of "actual innocence" based on his new assertions about not residing at the Northlawn residence at the time the gun was found and being coerced by

6

the ATF agent to admit the gun belonged to him, and his claims about not being read his
*Miranda* rights when he admitted owning the gun  -- do not escape the AEDPA statute of
limitations by "relating back" to the claims in his timely filed original § 2255 motion
because they are entirely new arguments that do not relate back to any of the claims in his
original § 2255 motion.  *See Oleson v. United States*, 2001 WL 1631828 *3 (6th Cir.
Dec.14, 2001).  Amendments that seek to add new legal theories or present new claims
based on different factual underpinnings are not permitted.  *Dean v. United States*, 278
F.3d 1218, 1221 (11th Cir.2002).  Accordingly, Rule 15(c) of the Federal Rules of Civil
Procedure does not save these claims as they do not "relate back" to the "conduct,
transaction, or occurrence" relied upon in the claims in the timely-filed § 2255 motion.
*Mayle v. Felix*, 545 at 656-67.

But even if Defendant Smith's claims of coercion and denial of Fifth Amendment
rights were timely, it is well established that a valid guilty plea in a criminal proceeding
generally forecloses claims arising from the alleged deprivation of constitutional rights
occurring before the entry of the plea.  *See United States v. Broce*, 488 U.S. 563, 569,
109 S.Ct. 757(1989); *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602 (1973). In
*Tollett*, the Supreme Court explained:

> [A] guilty plea represents a break in the chain of events which has preceded
> it in the criminal process. When a criminal defendant has solemnly
> admitted in open court that he is in fact guilty of the offense with which he
> is charged, he may not thereafter raise independent claims relating to the
> deprivation of constitutional rights that occurred prior to the entry of the
> guilty plea. He may only attack the voluntary and intelligent character of
> the guilty plea by showing that the advice he received from counsel was not

7

within [constitutional standards].

*Tollett*, 411 U.S. at 267.

Simply stated, a defendant who pleads guilty generally waives any non-jurisdictional claims that arose before his plea. *See United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir.2001); *Siebert v. Jackson*, 205 F. Supp. 2d 727, 733-34 (E.D. Mich. 2002); *see also Reed v. Henderson*, 385 F.2d 995, 996 (6th Cir.1967) (an alleged *Miranda* violation is not a jurisdictional issue and is waived by a guilty plea); *Williams v. Anderson*, 498 F. Supp. 151, 152 (E.D.Mich.1980) (entry of guilty plea precluded collateral habeas corpus attack on alleged coerced confession). Therefore, even if Defendant had timely filed his motion to amend within the limitations period, the new claims of actual innocence, coerced confession, and lack of *Miranda* warnings would be precluded.

B.   DEFENDANT'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

The requirements for demonstrating ineffective assistance of counsel were established by the United States Supreme Court in *Strickland v. Washington*, 406 U.S. 668, 104 S.Ct. 2052 (1984). To establish ineffective assistance of counsel, it must be shown (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. 406 U.S. at 687, 104 S.Ct. at 2064.

The proper standard for assessing an attorney's performance is that of reasonably effective assistance. *Id.* Thus, a guilty plea cannot be attacked as based on inadequate

legal advice unless counsel was not "a reasonably competent attorney" and the advice was not "within the range of competence demanded of attorneys in criminal cases." *Id.*

The *Strickland* court further directed that judicial scrutiny of counsel's performance must be highly deferential. *Id.*, 406 U.S. at 689, 105 S.Ct. at 2065. The court explained the need for deference:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* (Citations omitted).

> In the context of a guilty plea, the Supreme Court has held as follows:

> [T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based upon ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of attorney competence. . . . The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370 (1985).

9

The Sixth Circuit applied the foregoing standards in *Sullivan v. United States*, 11 F.3d 573 (6th Cir. 1993), a § 2255 case in which the petitioner, challenging the length of his sentence, argued ineffective assistance of counsel in connection with his having entered into a Rule 11 plea agreement. The district court denied Sullivan's 2255 and the Sixth Circuit affirmed, explaining:

> [P]etitioner's claim fails to meet even the first prong of *Strickland*. There has been no showing that counsel's performance was not competent. **The record reveals that the district court discussed the terms of the plea agreement with petitioner and that he was informed of the possible sentence which he faced. These terms were discussed, in petitioner's presence, in open court and on the record. There is no showing that petitioner was lied to or misled.**

*Id.* at 576 (emphasis added).

As in *Sullivan*, there is no showing in this case that Defendant's counsel was not competent. The record here reveals, just as the record did in *Sullivan*, that Defendant Smith was advised in open court of the terms of the plea agreement. There is no showing that he was lied to or misled. It is clear from the transcript of the Plea Hearing, that Defendant Smith is doing nothing more than engaging in the post-conviction second-guessing which the Supreme Court criticized in *Strickland*. Indeed, at the Plea Hearing, Smith affirmatively stated that he was satisfied with the advice and representation of his counsel.

During the Plea Hearing, the Court extensively questioned Smith regarding the assistance he received from his counsel; the making of his plea and his plea agreement; and the activities in which he engaged which gave rise to the criminal charges against

10

him.

Under oath, Smith stated as follows about his representation:

> THE COURT:  Now you have [your attorney] Mr. Edison here with you today.  Have you had a chance to review with Mr. Edison the charge that you're pleading guilty to, which is Count One of the Superseding Indictment, which is felon in possession of firearm under the armed career criminal enhancement.  Do you understand the charge?

> THE DEFENDANT: Yes, sir.

> THE COURT:  Have you had chance to have Mr. Edison explain the charge to you?

> THE DEFENDANT: Yes, sir.

> THE COURT:  Have you had a chance to ask him any questions that you might have about the charge?

> THE DEFENDANT: Yes, sir.

> THE COURT:  Has he answered those questions to your satisfaction?

> THE DEFENDANT: Yes, he has.

> THE COURT:  And you're clear you understand the charge? We're going to go over it in more detail in just a moment, but are you sure satisfied you understand the charge?

> THE DEFENDANT: Yes, sir.

> THE COURT:  How about the plea agreement? Have you had a chance to go of the plea agreement with Mr. Edison?

> THE DEFENDANT: Yes, sir.

11

THE COURT:  And the cooperation agreement?

THE DEFENDANT: Yes, sir.

THE COURT:  Has he explained to you the provisions of the plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT:  And the cooperation agreement?

THE DEFENDANT: Yes, sir.

THE COURT:  Have you had a chance to ask him any questions you might have about the plea agreement and the cooperation agreement?

THE DEFENDANT: Yes, I have.

THE COURT:  Has he answered those questions to your satisfaction?

THE DEFENDANT: Yes, he has.

THE COURT:  Are you satisfied that you understand the provisions of the plea agreement and the cooperation agreement?

THE DEFENDANT: Yes.

THE COURT:  Are you satisfied with the advice you've received in this case from Mr. Edison?

THE DEFENDANT: Yes, sir.

THE COURT:  You satisfied with his representation of you in general?

THE DEFENDANT: Yes, sir.

THE COURT:  Do you have any complaints about Mr.

> Edison's representation of you in this case that you
> want to bring to my attention before we go forward here
> today?
>
> THE DEFENDANT: No, sir.
>
> THE COURT:  All right. I take it from your
> answers then you're satisfied to have Mr. Edison
> represent you as you tender a guilty plea here today;
> is that true?
>
> THE DEFENDANT: Yes, sir.

[1/10/11 Plea Hearing Tr., pp. 6-8]

Despite the foregoing under oath, on the record statements of satisfaction with his counsel's representation, Defendant Smith now contends that he was not effectively represented because he was coerced by his attorney to plead guilty; he was misled as to his maximum sentence, i.e., he was "led to believe that [he] could get up to 180 months but was not told that 180 months was mandatory"; and his attorney never challenged his being sentenced pursuant to the ACCA even though his prior convictions do not meet the required elements of the ACCA.

    1.  <u>The Record Does Not Support Defendant's Claim of Being Lied To or Misled</u>

Smith's sworn statements on the record at the Plea Hearing do not support his claims of being lied to or misled as to the sentence he faced and to which he was pleading guilty.  More than once during the plea hearing, Defendant acknowledged understanding of the charges to which he was pleading and that his mandatory minimum sentence was 180 months (i.e., 15 years):

13

THE COURT:  I want to go over the charge with you just to make sure you understand it, then I'm going to go over the statutory penalties as well.

The grand jury has charged you in the first superseding indictment as follows: That on or about October 1 of 2009 here in the Eastern District of Michigan, that you having been previously convicted of a crime punishable by imprisonment of more than one year, which is a felony, knowingly possessed a firearm; specifically, a loaded .22 caliber R. G. Industries model R.G. 23 with a serial [number] 484760, that had traveled in interstate commerce prior to your having possession of it and that this is a violation of Title 18 United States Code Section 922(g)(1).

Further, it's charged that you had three previous convictions of violen[t] felonies or drug offenses serious drug offenses on occasions different from one another; specifically attempted burglary February 28, 1984, delivery of under 50 grams of cocaine May 6, 1985, possession with intent to deliver under five grams of cocaine November 12 of 1991, and possession -- I'm sorry.  Prisoner in possession of a weapon April 25 of 1995.

This is subject to penalties provided under title 18 United States 18 Section 924(e) which is the armed career criminal section. Do you understand the charge sir?

THE DEFENDANT: Yes, sir.

THE COURT:  This charge carries with it a number of statutory penalties as well as guidelines and we will discuss those when we get to your plea agreement in just a moment.

But for now, the statutory penalties are a **mandatory minimum of 15 years to life imprisonment**. The statutory fine is up to $250,000; there's no minimum fine and a term of supervised release up to three years with no minimum. **Do you understand the statutory terms, sir?**

14

**THE DEFENDANT: Yes, sir.**

[1/10/11 Plea Hrg. Tr. pp. 9-10 (emphasis added).]

Defendant further acknowledged understanding that additional convictions beyond those listed could affect his sentence:

> THE COURT:  . . . [I]f they're [sic] additional criminal convictions, it could have the effect of raising your sentence. Do you understand that?
>
> THE DEFENDANT:  Yes, sir.

*Id.* at p. 15.

Following Assistant United States Attorney Gabel's summary, in open court, of the terms of Defendant's plea agreement, Smith again acknowledged his understanding of the mandatory minimum sentence he faced as well as his understanding that any additional criminal convictions that the parties were not aware of at the time of hearing could affect his sentence:

> THE COURT:  What I going to do now is ask Mr. Gabel to summarize the terms of your plea agreement.
>
>                ***
>
> MR. GABEL:  Thank you, Your Honor. The defendant agrees to enter a plea of guilty to Count One of the Superseding Indictment which charges him with being a felon in possession of firearm and subject to the armed crier criminal act.
>
> The Armed Career Criminal Act, as this Court has stated, carries **a 15 years mandatory minimum** and up to a maximum of life imprisonment.

15

There are no sentencing guideline disputes. The guidelines are, as the parties see it, are largely driven by the **180 month mandatory minimum**. **So the parties agree that those defendants guideline range is 180 months**. The parties agree that the sentence of imprisonment in this case may not exceed the top of the sentencing guideline range as the determined by paragraph two b of the agreement. As it currently stands, paragraph 2B calculates the guidelines at 180 months. But as this Court discussed, that could be increased if there's additional criminal convictions that the parties were not aware of that the Probation Department determines should properly be scored.

***

. . . The parties have entered into a cooperation agreement. At this point, the cooperation to a certain extent has been received by the government by the form of third-party cooperation in particular, the defendant's wife has provided information to law enforcement that law enforcement is still attempting to determine its credibility.

But, at this point, the government does anticipate at least making some motion for a downward departure below the 15 year mandatory minimum.

If the Court accepts this plea agreement, the government will dismiss at sentencing Counts Two and counts -- Count Three of the superseding indictment. Finally, the defendant is pleading guilty voluntarily and agrees to give up all appeal rights he may have regarding both his conviction and sentence in exchange for the terms of this agreement. Those are the most salient terms of the Rule 11 Plea Agreement, Your Honor.

***

**THE COURT:  Okay. Mr. Smith is that the agreement as you understand it?**

16

**THE DEFENDANT: Yes, sir.**

*Id.* at pp. 16-18 (emphasis added).

As indicated above, the record clearly reveals that Mr. Smith was advised in open court of the terms of the plea agreement and he affirmatively stated under oath that he understood what he was pleading guilty to.  There is no showing that he was lied to or misled as to the 180-month mandatory minimum sentence the charges to which he was pleading guilty carried.

2.  Defendant's Claim that He Was Coerced Into Pleading Guilty Has No Merit

Defendant also claims he was "coerced" to plead by his attorney based upon his attorney telling him "you're facing life if you go to trial," and, therefore, it is best to plead guilty.  However, informing a defendant of the possibility of a lengthier sentence if he goes to trial and advising him to plead guilty does not amount to coercion.  Advice -- "even strong urging" -- by counsel does not amount to coercion invalidating a guilty plea. *Williams v. Chrans*, 945 F.2d 926, 933 (7th Cir.1991) (*quoting Lunz v. Henderson*, 533 F.2d 1322, 1327 (2d Cir.1976)), *cert. denied*, 505 U.S. 1208 (1992); *accord United States v. Carr*, 80 F.3d 413, 416 (10th Cir. 1996).

Further, on the record, under oath, Smith, more than once, denied being forced, threatened or coerced to plead guilty by his attorney or anyone else:

> THE COURT: Has anybody and by "anybody" either Mr. Edison, Mr. Gabel, any other lawyer, any other government agent, me, anybody, made you any other promises other than what's in the plea agreement concerning either your sentence or the plea agreement

17

in order to get you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: **Anybody's forced you, threatened you
intimidated you, coerced you or any member of your
family in order to get you to plead guilty?**

THE DEFENDANT: **No, sir.**

THE COURT: Has anybody told you I would be more
lenient with you if you plead guilty other than what's
in the plea agreement?

THE DEFENDANT: No, sir.

THE COURT: Just so we're clear, there have been
no other promises other than what's in the plea
agreement, no other promises made to you in order to
get you to plead guilty. Is that true?

THE DEFENDANT: Yes, sir. That's true.

THE COURT: **Nobody's forcing you, threatening you
or any member of your family; is that also true?**

THE DEFENDANT: **Yes, that's true.**

THE COURT: **Are you pleading guilty, sir, freely
and voluntarily?**

THE DEFENDANT: **Yes, sir.**

THE COURT:  **Pleading guilty, sir, because you are,
in fact guilty?**

THE DEFENDANT: **Yes, sir.**

*Id.* at pp. 18-20.

18

Accordingly, the Court finds no merit in Defendant's claim that his attorney coerced him into pleading guilty.

### 3.  Defendant's Prior Convictions Meet the Requirements for an Enhanced Sentence Under the ACCA

Defendant Smith's final argument is that his attorney's failure to challenge his sentence being enhanced pursuant to the ACCA amounted to ineffective assistance of counsel because he claims his prior convictions do not meet the required elements of the ACCA.  However, an attorney cannot be said to be ineffective for failing to take frivolous action.  *United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004).  Moreover, failing to pursue an argument with no chance of success cannot not possibly prejudice the outcome. *Id.  See also Hill v. Lockhart*, 474 U.S. at 59, 106 S.Ct. at 371 (no prejudice results from a lawyer's failure to pursue a potential defense unless it likely would have succeeded at trial.)

Generally, a defendant convicted of being a felon-in-possession of a firearm pursuant to 18 U.S.C. § 922(g) is sentenced between zero to ten years in prison.  18 U.S.C. § 922(g).  However, pursuant to the ACCA, a person who is a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g) and who has "three previous convictions ... for a violent felony or a serious drug offense ... committed on occasions different from one another ... **shall be** ... **imprisoned for not less than fifteen years**."  18 U.S.C. § 924(e)(1) (emphasis added).

For purposes of designating an Armed Career Criminal pursuant to the ACCA, a

"violent felony" is "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), or "is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*" 18 U.S.C. § 924(e)(2)(B)(ii).[3]  A "serious drug offense" is defined to include "an offense under State law, involving manufacturing, distributing, or possessing with intent to distribute, a controlled substance for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 922(e)(2)(A)(ii).

As indicated, § 924(e) requires three previous convictions for a violent felony or a serious drug offense, "committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  Discrete criminal episodes, rather than the dates of conviction, trigger enhancement.  *United States v. Gray*, 85 F.3d 380 (8th Cir.), *cert. denied*, 519 U.S. 907 (1996).  So long as the convictions arose out of separate and distinct criminal episodes, they can be separately counted for purposes of an ACCA enhancement even if they were entered on one date and resulted in one sentence.  *United States v. Lewis*, 991 F.2d 524 (9th Cir.), *cert denied*, 510 U.S. 878 (1993).  *See also United States v. Long*, 320 F.3d 795 (8th Cir. 2003) (in sentencing for being a felon in possession of a firearm,

---

[3] The italicized portion of § 924(e)(2)(B)(ii) is often referred to as the "residual clause."  *See Johnson v. United States*, ___ U.S. ___, 135 S.Ct. 2551, 2556 (2015). However, in June 2015, the Supreme Court determined that this residual clause is unconstitutionally vague and violates due process.  *See id.*, 135 S.Ct. at 2557-63.

enhancement pursuant to the ACCA applied where even though defendant's previous

convictions for serious drug offenses all occurred in the same proceeding and resulted in

a single sentence where the proceeding concerned three separate deliveries of a

controlled substance on three separate days); *United States v. Owens,*  15 F.3d 995, 998

(11th Cir. 1994) (where the felonies for which defendant was convicted each occurred on

a different date, they could be separately counted for ACCA enhancement although they

were all resolved in one proceeding).[4]


As the Sixth Circuit explained in *United States v. Martin*, 526 F.3d 926 (6th Cir.),

*cert. denied*, 555 U.S. 928 (2008):

> "[T]he relevant factor for determining the number of predicate offenses under the ACCA is not the date of conviction for those predicate offenses, but the date the defendant committed the offense for which he is subsequently convicted."  [*United States v.*] *Roach*, 958 F.2d [679,] 683 [(6th Cir.), *cert denied*, 506 U.S. 845 (1992)].  Thus, in *Roach*, for purposes of determining whether the defendant committed the requisite number of prior offenses for sentence enhancement under the ACCA, we found immaterial the fact that two or more of the defendant's convictions

---

[4]  Courts have come an opposite conclusion with respect to the Sentencing Guidelines. *See e.g., Owens*, at 998 n. 7*,* (quoting *United States v. Delvecchio*, 920 F.2d 810, 812 (11th Cir.1991). ("[U]nder the guidelines, . . ."[c]ases are related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.... [W]henever a defendant is sentenced simultaneously ... his sentences are related and cannot be assessed separately under the guidelines.")).  However, "[it is] immaterial for ACCA enhancement purposes the fact that offenses were consolidated for sentencing or for concurrent sentences, even though such consolidation could be relevant under the otherwise applicable Sentencing Guidelines . . . ." *United States v. Martin*, 526 F.3d 926, 939 (6th Cir.), *cert. denied*, 555 U.S. 928 (2008) (citing *United States v. Warren*, 973 F.2d 1304, 1310 (6th Cir. 1992)).

stemmed from the same indictment. *Id.* Consequently, we held that three convictions on the same date did not constitute a single criminal episode even where the convictions were not separated by any other intervening convictions and occurred within only a matter of days. Likewise, in *United States v. Warren*, 973 F.2d 1304 (6th Cir. 1992), this Court held immaterial for ACCA enhancement purposes the fact that offenses were consolidated for sentencing or for concurrent sentences, even though consolidation could be relevant under the otherwise applicable Sentencing Guidelines, so long as the separate offenses for which the defendant was convicted occurred at different times and/or places. *Id.* at 1310.

526 F.3d at 939.

Furthermore, failing to separately identify to the multiple crimes underlying a single state court conviction in the indictment does not preclude counting the predicate crimes separately for purposes of the ACCA enhancement so long as the presentence report or other state records establish that the crimes occurred on different dates. *See United States v. Sullivan*, 98 F.3d 686, 688 (1st Cir. 1996), *cert. denied*, 520 U.S. 1160 (1997) (indictment sufficiently alleged three convictions valid for use as predicate offenses under the ACCA even though it only listed one prior state court burglary conviction and one arson conviction, where the presentence report revealed that defendant actually had four prior state court burglary convictions, which although consolidated for sentencing in state court, took place on different dates and involved different victims.); *see also United States v. Harris*, 447 F.3d 1300 (10th Cir. 2006) (holding that district court could rely on PSR in finding that separate occasions requirement of ACCA was satisfied where crimes were separated over time and defendant failed to object to PSR); *United States v. Morrell*, 61 F.3d 279, 279–80 (4th Cir.1995) (affirming sentence under

22

section 924(e) where possibility of its application, and the possible predicate offenses, were not raised until the PSR); *United States v. Hudspeth*, 42 F.3d 1015, 1024 n. 6 (7th Cir.1994) ( en banc ), *cert. denied*, 515 U.S. 1105 (1995) (explaining that a "certified record of conviction or a [PSR], if not challenged, will normally satisfy" the government's burden of establishing "that a defendant has three prior felony convictions").

The First Superseding Indictment in Defendant Smith's case identified four convictions as the predicate for the ACCA enhanced sentence:

1.     Attempted Burglary, February 28, 1984;[5]
2.     Delivery under 50 Grams Cocaine, May 6, 1985;[6]
3.     Possession with Intent to Deliver under 50 Grams Cocaine, November 12, 1991; and
4.     Prisoner in Possession of a Weapon, April 25, 1995.

[First Superseding Indictment, Count One.]

Smith argues that not all of these convictions are ACCA-qualifying convictions for "crimes of violence."  In his amended pleadings he clarifies his argument:  he argues that because the court used the "residual clause" of ACCA to determine that he had three prior

_____

[5]  Although Defendant's February 28, 1984 conviction is referred to in the indictment as "attempted burglary," the Detroit Recorders' Court Records and the PSR state that Defendant was convicted on that date of "Attempted Breaking and Entry of an Occupied Dwelling," with intent to commit larceny.  *See* PSR, pp. 6-7 and Detroit Recorders Court Case No. 83-00408, cited therein.

[6]  Although the indictment listed one "conviction" on May 6, 1985 for delivery under 50 grams of cocaine, this conviction was actually for two separate ACCA-qualifying crimes of delivery of under 50 grams of cocaine committed on two separate dates: November 23, 1984 and April 5, 1985.  *See* discussion *infra* at pp. 29-30.

qualifying convictions, and because the Supreme Court invalidated the residual clause in *Johnson v. United States*, ___ U.S. ___, 135 S.Ct. 2551 (2015), his ACCA-enhanced sentence should be vacated.

Smith does not specify which prior convictions he views as non-qualifying, although presumably, Defendant's arguments are directed at his convictions for attempted burglary [attempted breaking and entering an occupied dwelling] and prisoner in possession of a weapon. [7]

Under Michigan law, neither attempted breaking and entering of a dwelling nor prisoner in possession of a weapon "has as an element the use, attempted use, or threatened use of physical force against the person or another," 18 U.S.C. § 924(e)(2)(B)(i),[8] and is not one of the four specifically enumerated crimes in §

---

[7] These two convictions clearly would not qualify as "serious drug offenses" under ACCA § 924(e)(2)(A), whereas Smith's other convictions -- for delivery of under 50 grams of cocaine and possession with intent to deliver under 50 grams of cocaine -- clearly do qualify as "serious drug offenses" under § 922(e)(2)(A)(ii) as they are "offense[s] under State law, involving. . . distributing or possessing with intent to. . . distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).  *See* Mich. Comp. Laws § 333.7401(1), (2)(a)(iv), which makes it a felony punishable by a term of imprisonment up to 20 years to deliver, or possess with intent to deliver a controlled substance in an amount less than 50 grams.

[8] The elements of the offense of attempted breaking and entering with intent to commit larceny are that the defendant (1) attempted to (a) break into and (b) enter a building, and (2) at the time of the attempt, the defendant intended to commit a larceny therein. *See People v. Toole*, 227 Mich. App. 656, 658, 576 N.W.2d 441, 443 (1998) (citing *People v. Adams*, 202 Mich. App. 385, 390, 509 N.W.2d 530 (1993)). "Actual entry is not a necessary element for the crime of attempted breaking and entry with intent to commit larceny."  *People v. Combs*, 69 Mich. App. 711, 714, 245 N.W.2d 338 (1976).

24

924(e)(2)(B)(ii):  burglary, arson, extortion or the use of explosives.  Therefore, these two

convictions could only have been used to enhance Defendant's felon-in-possession

sentence if they fell within the purview of the "residual clause" of § 924(e)(2)(B)(ii) as a

crime that "otherwise involves conduct that presents a potential risk of physical injury to

another."

     In *Johnson v. United States*, however, the Supreme Court held that the residual

clause of § 924(e)(2)(B)(ii) is unconstitutionally vague and, therefore, determined that

imposing an enhanced sentence based on the defendant's prior conviction for unlawful

possession of a short-barreled shotgun violated due process.  The Court also expressly

overruled its prior decisions in *James v. United States*, 550 U.S. 192 (2007) and *Sykes v.

United States*, 564 U.S. 1 (2011), in which the Court had held that the residual clause

covered the crimes of "attempted burglary" (*James*) and "vehicular flight from a law-

enforcement officer (*Sykes*).

     Defendant Smith seeks application of the *Johnson* decision with respect to his

_____

     The prisoner in possession of a weapon statute, MCL 800.283(4), provides:

     Unless authorized by the chief administrator of the correctional facility, a prisoner
     shall not have in his or her possession or under his or her control a weapon or other
     implement which may be used to injure a prisoner or other person, or to assist a
     prisoner to escape from imprisonment.

     "Only two elements must be established to secure a conviction on that charge: that
     defendant was a prisoner and possessed, or had under his control, a weapon or other
     implement that could be used to injure another person."  *People v. Moore*, 2014 WL
     2881066 at *2 (Mich. App. 2014), *rev'd on other grounds*, 497 Mich. 1043 (2015).

ACCA-enhanced sentence.

When a Supreme Court decision results in a "new rule," that rule applies to all criminal cases still pending on direct review. *Schiriro v. Sumerlin*, 542 U.S. 348, 351, 124 S.Ct. 2519, 2522 (2004) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). However, as to convictions that are already final -- such as that of Defendant Smith -- the rule applies only in limited circumstances. *Id.*

As the Supreme Court explained in *Schiriro*:

> New substantive rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, *see Bousley v. United States*, 523 U.S. 614, 620-621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, *see Saffle v. Parks*, 494 U.S. 484, 494-495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *Teague v. Lane*, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). Such rules apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal'" or faces a punishment that the law cannot impose upon him. *Bousley, supra*, at 620, 118 S.Ct. 1604 (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)).

> New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle, supra*, at 495, 110 S.Ct. 1257 (quoting *Teague*, 489 U.S., at 311, 109 S.Ct. 1060 (plurality opinion)). That a new procedural rule is "fundamental" in some abstract sense is not enough; the rule must be one "without which the likelihood of an accurate conviction is seriously diminished." *Id*., at 313, 109 S.Ct. 1060 (emphasis added). This class of rules is extremely narrow, and "it is unlikely that any

... 'ha[s] yet to emerge.'" *Tyler v. Cain*, 533 U.S. 656, 667, n. 7, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (quoting *Sawyer v. Smith*, 497 U.S. 227, 243, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990)).

\*\*\*

A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes. *See Bousley, supra*, at 620-621, 118 S.Ct. 1604 (rule "hold[s] that a ... statute does not reach certain conduct" or "make[s] conduct criminal"); *Saffle, supra*, at 495, 110 S.Ct. 1257 (rule "decriminalize[s] a class of conduct [or] prohibit[s] the imposition of ... punishment on a particular class of persons"). In contrast, rules that regulate only the manner of determining the defendant's culpability are procedural. *See Bousley, supra*, at 620, 118 S.Ct. 1604.

542 U.S. at 351-53, 124 S.Ct. at 2422-23.

To date, the Courts of Appeals for the Seventh, Tenth, and Eleventh Circuits have all determined that *Johnson* announced a new substantive rule of constitutional law. *See Price v. United States*, 795 F.3d 731, 732 (7th Cir. 2015); *In re Rivero*, 797 F.3d 986, 989 (11th Cir. 2015); *In re Gieswein*, ___ F.3d ___, 2015 WL 5534388 at *2 (10th Cir. Sept. 21, 2015). As the Eleventh Circuit explained in *Rivero*,

The new rule announced in [*Johnson*] is substantive rather than procedural because it narrow[ed] the scope of [section] 924(e) by interpreting its terms, specifically, the term violent felony. In *Johnson*, the Supreme Court held that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process. That is, *Johnson* narrowed the class of people who are eligible for an increased sentence under the Armed Career Criminal Act.

*In re Rivero*, 797 F.3d at 989 (citing *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253,1278 (11th Cir. 2013) (internal citations, internal punctuation, and emphasis omitted).

27

The Sixth Circuit has not yet weighed in on the issue of whether *Johnson* announced a new substantive or procedural rule and this Court need not decide the issue for purposes of this case because, even assuming *arguendo* that the rule announced in *Johnson* is "substantive" thereby warranting its retroactive application to encompass Defendant Smith's case, *Johnson* would not entitle Smith to relief from his enhanced sentence.

While it is true that any offenses that were determined to be qualifying offenses pursuant to the residual clause could no longer properly considered to be predicate offenses under *Johnson*, Defendant has at most two such offenses:  the offense of attempted burglary (breaking and entering a dwelling) and the offense of prisoner in possession of a weapon.  The First Superseding Indictment, however, also listed serious drug convictions on May 6, 1985, for delivery under 50 grams of cocaine, and on November 12, 1991, for possession with intent to deliver under 50 grams of cocaine.

Although only one "conviction" on May 6, 1985 was listed in Smith's indictment, the PSR and the Detroit Recorder's Court records show that this conviction was for *two* distinct crimes of delivery of under 50 grams of cocaine:  one which occurred on November 23, 1984, and one that occurred on April 5, 1985.  Smith pled guilty to each of the crimes on separate dates and, pursuant to the judgment of conviction entered on May 6, 1985, he was sentenced to 18 months to 20 years on each crime, with the sentences to run concurrently with one another.  [*See* PSR pp. 7-8 and Detroit Recorder's Court records cited therein.]  As the Sixth Circuit made clear in *Martin*,

28

> [T]he relevant factor for determining the number of predicate offenses under the ACCA is not the date of conviction for those predicate offenses, *but the date the defendant committed the offense for which he is subsequently convicted. . . . [It is] immaterial for ACCA enhancement purposes the fact that offenses were consolidated for sentencing or for concurrent sentences* . . . so long as the separate offenses for which the defendant was convicted occurred at different times and/or places.

*United States v. Martin*, 526 F.3d at 939 (emphasis added).

Thus, even if, by application of *Johnson*, Defendant's convictions for attempted burglary and prisoner in possession of a weapon are not counted, Defendant still has three prior convictions for serious drug offenses committed on three different dates that qualify as ACCA predicates for purposes of an enhanced sentence pursuant to 18 U.S.C. § 924(e)(1).  Therefore, Defendant is not entitled to relief from the sentence imposed upon him.  Accordingly, Defendant's § 2255 Motion will be DENIED.

The Court will also deny a certificate of appealability.  Before a Section 2255 movant may appeal an adverse decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the matter should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's

29

assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2255 Cases, Rule 11(a), 28 U.S.C. foll. § 2255.

For the reasons stated in this Opinion, the Court will deny Defendant Smith a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. The Court also will deny leave to appeal *in forma pauperis* as an appeal cannot be taken in good faith. Fed. R. App. P. 24(a).

CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant Smith's § 2255 Motion to Vacate his Sentence **[Dkt. No. 24]**, as amended by his supplemental pleadings **[Dkt. Nos. 31, 33]**, is DENIED. Accordingly,

IT IS FURTHER ORDERED that Civil Action No. 12-cv-11913 is DISMISSED, with prejudice.

IT IS FURTHER ORDERED that a Certificate of Appealability is DENIED. Leave to appeal *in forma pauperis* also is DENIED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: September 30, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2015, by electronic and/or ordinary mail.

30

s/Julie Owens
Case Manager, (313) 234-5135

31