UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                Case Number 10-20058

v.                                                  Honorable David M. Lawson

ROOSEVELT SMITH,

        Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Roosevelt Smith has filed a motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. He argues that his health conditions render him vulnerable to complications from possible infection with the COVID-19 disease. Notably, the defendant's medical records indicate that he previously was diagnosed by laboratory tests as having an asymptomatic infection of the coronavirus and was placed in isolation. Available medical records indicate that he recovered, although the defendant asserts that he has not "fully recovered" and continues to have "difficulty breathing," for which he was prescribed an inhaler. Nonetheless, Smith has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, and therefore his motion will be denied.

I.

Smith pleaded guilty to one count of possessing a firearm as a convicted felon. On May 10, 2011, the Honorable Gerald Rosen sentenced him as an armed career criminal (after a motion for downward departure by the government) to 156 months in prison. He has served approximately 112 months or around 72% of that term, and he presently is held in the custody of the Bureau of

Prisons at FCI Elkton, a low security facility that houses around 2,140 inmates. Public records of the BOP indicate that Smith is scheduled to be released from prison on October 18, 2022. He is 55 years old.

On July 21, 2020, Smith filed his *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. In his motion, Smith argued that he is qualified for release because of his asthma. The Court appointed counsel, who filed a supplemental brief in support of the motion on September 18, 2020. The government has filed a response opposing the motion on the merits.

The most recent data disclosed by the BOP indicates that there are two active coronavirus cases among inmates and two among staff at the Elkton facility. Also, 982 prisoners and 52 staff previously had been infected by the novel coronavirus but now have recovered. Smith was among them. Reports indicate that nine other prisoners have died. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Smith relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

Addressing the second requirement, Smith argues that compassionate release is warranted based on his asthma. He included medical records indicating his diagnosis with an asymptomatic case of COVID-19, for which he was placed in isolation and from which he has since recovered. Nevertheless, he argues that the prison environment and his medical condition still present real risks to his health. In a supplement filed by his appointed counsel, the defendant disputes the government's position that he has "recovered" from his illness after being infected with the coronavirus. The defendant asserts that, after he was diagnosed with COVID-19 in May 2020, he was placed in "isolation" with 45 other inmates in the prison chapel, quarantined for nine days, and given no medications other than an albuterol inhaler and ibuprofen. He states that during that

time he was seen only by nurses and received no other medical treatment. The defendant further asserts that he has not "recovered" since then, continues to have "difficulty breathing," and later was prescribed a "stronger" steroidal inhaler for his breathing issues. He contends that his ongoing respiratory compromise and history of asthma elevate rather than mitigate his risk.

The government concedes that the request for release has been administratively exhausted. However, it argues that release is not favored because Smith has failed to show that he suffers from any health condition that comprises a significant risk factor for exposure to the coronavirus disease. The government contends that the defendant's asthma is "well controlled" and there are no indications in his medical records that it is the sort of "moderate" or "severe" condition that is recognized by the CDC as creating a higher risk. The government argues, moreover, that any concerns for the defendant's health are mitigated by the fact that he already was diagnosed with an asymptomatic infection of the disease and recovered without complications. The government contends that, although the science is yet unclear, the previous infection is believed by some to provide at least some level of immunity from subsequent infections, and, moreover, the previous infection caused the defendant no serious or lasting harm.

The defendant's generalized concerns about the health risks from his incarceration are justifiable. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020).

"The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied. However, the defendant has not established extraordinary or compelling reasons that would warrant a sentence reduction based on his diagnosed medical conditions, because his medical records do not indicate that his asthma is sufficiently severe or persistent to constitute a serious risk factor. Moreover, the fact that the defendant previously contracted the virus asymptomatically and has since recovered without serious consequences mitigates against a finding that in his present situation he is subjected to any extraordinary risk from a possible future infection. Smith's showing on the second element that he must establish to justify compassionate release is insufficient, so it is unnecessary to discuss the other elements. His health concerns are understandable, but insufficient to warrant immediate release.

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection.

*United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).  The defendant's age (55) does not put him in a high-risk category, but he correctly points out that other pertinent recognized risk factors include asthma, at least when it has been diagnosed as "moderate" or "severe" and persistent.  The CDC recognizes "moderate to severe" asthma as a risk factor for COVID-19 infection, but the defendant's medical records do not indicate that his asthma meets either of those criteria.  *See* CDC Risk Factors, *supra*; *see also* WedMD: What is Asthma?, https://www.webmd.com/asthma/what-is-asthma ("3. Moderate persistent asthma. Symptoms three to six times a week. Nighttime symptoms three to four times a month. Asthma attacks might affect activities. 4. Severe persistent asthma. Ongoing symptoms both day and night. You have to limit your activities.").  The defendant's records indicate only that he has a history of asthma, and they do not disclose any suggestion that it persistently is either "moderate" or "severe."  The defendant asserts that he continues to have "difficulty breathing" since he was diagnosed with the coronavirus, but his supplemental arguments on this point are not supported by any new medical records.  Instead, the available medical records all support a conclusion that the defendant has no medical history of either "moderate" or "severe" and "persistent" asthma, which is the grade of diagnosis that constitutes a recognized serious medical risk.  *See* Medical Report dated Feb. 14, 2019, ECF No. 45-1, PageID.477 (characterizing asthma as "mild" and "intermittent"); Report dated June 10, 2019, PageID.465 ("Uses rescue inhaler three times weekly on average with exercise only."); Report dated Nov. 25, 2019, PageID.438 ("States only occasional wheeze, no cough or night time

[symptoms]."); Report dated May 4, 2020, PageID.523 ("Asthma is well controlled."). Despite the defendant's assertion that he continues to have breathing difficulties, there is no medical backup for his assertion that his present respiratory condition constitutes a recognized serious medical risk factor. Moreover, there is no medical evidence suggesting that his present respiratory symptoms are not due to the same previously diagnosed "mild," "intermittent," and "well controlled" asthma, which evidently has been appropriately treated with medication.

The government's position that the defendant's risk is mitigated due to prospective immunity from his past infection is at best questionable, and the most recent guidance from the CDC indicates that the scientific evidence presently available does not support a conclusion that persons infected with COVID-19 are immune from further disease after recovery. *See* CDC: Updated Isolation Guidance, https://www.cdc.gov/media/releases/2020/s0814-updated-isolation-guidance.html ("Contrary to media reporting today, this science does not imply a person is immune to reinfection with SARS-CoV-2, the virus that causes COVID-19, in the 3 months following infection. The latest data simply suggests that retesting someone in the 3 months following initial infection is not necessary unless that person is exhibiting the symptoms of COVID-19 and the symptoms cannot be associated with another illness."); CDC: Clinical Questions about COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html ("There is no firm evidence that the antibodies that develop in response to SARS-CoV-2 infection are protective. If these antibodies are protective, it's not known what antibody levels are needed to protect against reinfection."). Instead, the most recently available guidance advises only that the science demonstrates that the period of infectiousness ends within 10 days after the onset of symptoms or within 20 days for those who become severely ill, and, thus, the fact that a person has tested positive for the virus

does not warrant repeated testing or continued isolation after those presumptive infectious periods have expired.

Certainly, and as the government concedes, the severity of the outbreak at Elkton has been alarming and "among the worst" in the federal prison system. But recent reports suggest that prison authorities have succeeded in bringing the outbreak under control, based on the presence of only one active case among prisoners and two among staff. Although the probability of infection for prisoners confined at Elkton as recently as several months ago appeared quite high, presently the danger appears largely to have abated. Moreover, the defendant previously was infected with an asymptomatic case of the disease. The defendant contends that he was afforded only minimal medical attention during his illness, but there is nothing suggesting that his condition was unduly neglected by prison medical staff, since the available medical notes indicate that he suffered no life-threatening complications and since has recovered. *See* Medical Reports dated May 24-28, 2020, ECF No. 37, PageID.165-70. Whether or not the defendant may be presumed to have any prospective immunity to the disease, the fact that he previously was infected and recovered without developing any life-threatening complications mitigates against a finding that the risks of reinfection in his present state of health are so dire as to warrant immediate release from confinement. *See United States v. Shrout*, No. 15-00438, 2020 WL 3483703, at *4 (D. Or. June 26, 2020) ("The Court acknowledges that Shrout suffers from underlying conditions (cardiovascular diseases) that would make him more susceptible to contracting COVID-19, and that the virus would further complicate those conditions. In addition to his age, those are valid concerns, but Shrout has already contracted COVID-19 and, crucially, the BOP has properly managed the disease. . . . In fact, Shrout was mostly asymptomatic and appears to have recovered from his bout with COVID-19. The Court finds that Shrout has not carried his burden to prove his

medical condition is an 'extraordinary and compelling' reason that warrants a sentence reduction in this case.").

III.

Smith has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 37) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   September 23, 2020